1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES LEE MCNEIL,

                              Petitioner,

          v.

RICHARD MORGAN,

                              Respondent.

Case No.  C05-5328FDB

REPORT AND
RECOMMENDATION

Noted for April 14, 2006

Petitioner is a state prisoner currently incarcerated at the Stafford Creek Corrections Center, located in Aberdeen, Washington.  This matter is before the court on his petition for writ of *habeas corpus* filed with this court pursuant to 28 U.S.C. § 2254. (Dkt. #6).  Respondent has answered the petition and filed the relevant state court records.  Thus, the case is ripe for review and a decision by the court.

FACTUAL AND PROCEDURAL HISTORY

Petitioner was found guilty of robbery in the first degree with a firearm enhancement on February 21, 2001, in Mason County Superior Court following a trial by jury. Respondent's Submission of Relevant State Court Record ("Record"), Exhibit 1, p. 1 (Dkt. #19).  He was sentenced to a total prison term of 231 months, including 60 months for the firearm enhancement. Id. at p. 5.  The Washington State Court of Appeals summarized the facts of petitioner's case in relevant part as follows:

> Robert Cole lived in a remote rural area on North Shore Road near Belfair in
> Mason County.  Around 9:00 a.m. on Sunday, December 17, 2000, Cole heard his
> truck's motor running.  He investigated and found that his truck was running in his
> neighbor's yard.  Cole shouted at a man who jumped into the back of Cole's pickup and
> pointed a gun at Cole.  Cole immediately reported the incident to the police.

When Deputy James Morini responded, he found Cole's empty truck still running. The lock had been ripped from the driver's side door and the steering column had been smashed.

Morini took down a description of both the suspect and the firearm which was later used by detectives. Fresh, muddy tire tracks led out of the neighbor's driveway indicating that a vehicle had departed at a high rate of speed. Deputies gathered a few other items, but none contained fingerprints.

At approximately 6:30 p.m. that same day, when Deputy Luther Pittman was driving near 74 Timber Lane in Tahuya, he noticed a white Toyota pickup without a front license plate. Pittman ran a check and learned that the truck was registered to Anthony Hutson and had been stolen from Lake Bay. Pittman impounded the truck. Items belonging to a Port Orchard burglary victim named Thomas J. Hackney were recovered during the subsequent inventory search.

While conducting the inventory search, Pittman and his partner, Deputy Shawn Donnelly, received information that the occupant of the Tahuya residence had returned in a white Suzuki vehicle. Donnelly and Pittman went to the residence where they saw the Suzuki traveling toward them; it bore the license plates dispatch had relayed. The deputies pursued the Suzuki, but it refused to pull over. The chase ended in Kitsap County when the driver, later identified as McNeil, was apprehended.

Deputies performed a check and inventory search of the Suzuki. The Suzuki was also stolen and its steering column had been damaged and removed to allow access to the ignition switch.

Approximately three days later, Deputy Jack Gardner went to Cole's daughter's home in the Lakewood-University Place area. Cole identified McNeil from the photo montage Gardner showed him as being the man in his truck with the gun. Cole expressed no doubt concerning McNeil's identification and indicated that he recognized McNeil's facial features, beard, and hair.

The State charged McNeil with first degree robbery and a jury found him guilty on February 21, 2001. McNeil also pleaded guilty to attempting to elude a pursuing police vehicle and first degree possession of stolen property under a cause number that is not part of this appeal. On May 3, 2001, McNeil received a standard range sentence of 231 months for the robbery to be served consecutive to the sentences imposed for possession of stolen property and attempting to elude. He filed a timely notice of appeal of his robbery conviction the same day.

Record, Exhibit 5, pp. 1-3.

As noted by the Washington State Court of Appeals, petitioner timely appealed his conviction. On March 18, 2003, the court of appeals affirmed petitioner's conviction. Id. at 1, 10. Petitioner appealed the court of appeals' decision to the Washington State Supreme Court. On May 3, 2003, the court of appeals issued its mandate, and on January 7, 2004, the supreme court denied petitioner's petition for review. Id., Exhibits 7-8.

On March 3, 2004, petitioner filed a personal restraint petition with the Washington State Court of Appeals, which was dismissed on July 27, 2004. Id., Exhibits 9 and 11. Petitioner filed a motion for reconsideration of the dismissal with the court of appeals on August 24, 2004, which was treated as a motion for discretionary review by the Washington State Supreme Court. Id., Exhibits 12-13. On October 18, 2004, petitioner's motion for discretionary review was denied by the Washington State Supreme Court

1   Commissioner. Id., Exhibit 16.

2        Petitioner filed a motion to modify the Commissioner's ruling on November 10, 2004, which was

3   denied by the Washington State Supreme Court on January 4, 2005. Id., Exhibits 17 and 19.  On January

4   31, 2005, the Washington State Court of Appeals issued a certificate of finality. Id., Exhibit 20.  Petitioner

5   filed his petition for writ of *habeas corpus* with this court on May 11, 2005. (Dkt. #1 and #6).

6        In his petition, petitioner challenges the legality of his conviction, based on the following grounds

7   for federal *habeas corpus* relief:

8        (1)    The photomontage used by the police and shown to the victim was impermissibly
              suggestive, and other evidence relative to the victim's identification of petitioner
9              was unreliable.

        (2)    Facts presented at trial to support the firearm enhancement were insufficient
10              proof by state statutory definition.

11  Petition, at pp. 7-8.

12       There appears to be no issue of timeliness concerning petitioner's federal *habeas corpus* petition.

13  Although respondent argues petitioner did not exhaust his state remedies with respect to the second

14  ground, asserting that he has failed to allege a federal constitutional violation, as explained in the order to

15  show cause the undersigned issued on January 13, 2006, it appears petitioner has done so regarding the

16  issue of insufficiency of evidence. (Dkt. #21).  Therefore, after carefully reviewing petitioner's petition,

17  respondent's answer and supplemental brief,[1] and the remaining record, the undersigned recommends that

18  the Court deny the petition for the reasons set forth below.

19                    NO EVIDENTIARY HEARING IS REQUIRED

20       In a proceeding instituted by the filing of a federal *habeas corpus* petition by a person in custody

21  pursuant to a judgment of a state court, the "determination of a factual issue" made by that court "shall be

22  presumed to be correct." 28 U.S.C. § 2254(e)(1).  Under 28 U.S.C. § 2254(e)(1), the petitioner has "the

23  burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

24       Where a petitioner "has diligently sought to develop the factual basis of a claim for habeas relief,

25  but has been denied the opportunity to do so by the state court," an evidentiary hearing in federal court will

26  not be precluded. Baja v. Ducharme, 187 F.3d 1075, 1078-79 (9th Cir. 1999) (quoting Cardwell v. Greene,

27

28  _____

            [1]Petitioner was given the opportunity to file a reply to respondent's supplemental brief (see Dkt. #21), but did not do so.

152 F.3d 331, 337 (4th Cir. 1998)).  On the other hand, if the petitioner fails to develop "the factual basis of a claim" in the state court proceedings, an evidentiary hearing on that claim shall not be held, unless the petitioner shows:

> (A) the claim relies on--
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense

28 U.S.C. § 2254(e)(2).

An evidentiary hearing "is required when the petitioner's allegations, if proven, would establish the right to relief." Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998).  It "is *not* required on issues that can be resolved by reference to the state court record." Id. (emphasis in original).  As the Ninth Circuit has stated, "[i]t is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." Id.; United States v. Birtle, 792 F.2d 846, 849 (9th Cir. 1986) (evidentiary hearing not required if motion, files and records of case conclusively show petitioner is entitled to no relief) (quoting 28 U.S.C. § 2255).

Here, "[t]here is no indication from the arguments presented" by petitioner "that an evidentiary hearing would in any way shed new light on the" grounds for federal *habeas corpus* relief raised in his petition. Totten, 137 F.2d at 1177.  Because, as discussed below, the issues raised by petitioner may be resolved based solely on the state court record and he has failed to prove his allegation of constitutional errors, no evidentiary hearing is required.

DISCUSSION

I.    Standard of Review

A federal petition for writ of *habeas corpus* filed on behalf of a person in custody pursuant to a judgment of a state court:

> [S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Thus, 28 U.S.C. § 2254(d) "defines two categories of cases" where such relief may be obtained. Williams v. Taylor, 529 U.S. 362, 404 (2000).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams, 529 U.S. at 405-06).  A state court decision also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. Id.

A state court decision can involve an "unreasonable application" of the Supreme Court's clearly established precedent in the following two ways: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407.  However, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." Lockyer, 538 U.S. at 75.  That is, "[t]he state court's application of clearly established law must be objectively unreasonable." Id.

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Juan H. v. Allen, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)).  As noted above, however, "[a] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

II.    Scope of Review and Harmless Error

The district court may not "reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Thus, the court "is limited to deciding whether a conviction violated

the Constitution, laws, or treaties of the United States." Id. at 68; see also Smith v. Phillips, 455 U.S. 209,
221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may
intervene only to correct wrongs of constitutional dimension."). In addition, for federal *habeas corpus*
relief to be granted, the constitutional error must have had a "substantial and injurious effect or influence in
determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citation omitted). In
other words, a petitioner is "not entitled to habeas relief based on trial error," unless he or she "can
establish that it resulted in 'actual prejudice.'" Id.

III.    Use of the Photomontage Did Not Violate Petitioner's Right to Due Process

Certain "pretrial identification procedures may be so impermissibly suggestive," that they "taint
subsequent in-court identifications and thereby deny a defendant due process of law." United States v.
Bagley, 772 F.2d 482, 492 (9th Cir. 1985). Thus, to successfully challenge "the admission of evidence
derived from suggestive identification procedures," the petitioner must show the confrontation "was so
unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due
process of law." Neil v. Biggers, 409 U.S. 188, 196 (1972) (quoting Stovall v. Denno, 388 U.S. 293, 301-
02 (1967)). If a challenged procedure is found to be "not impermissibly suggestive," the "inquiry into the
due process claim ends." Bagley, 772 F.2d at 492.

For "convictions based on eye-witness identification at trial following a pretrial identification by
photograph," they will be set aside "only if the photographic identification procedure was so impermissibly
suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Neil, 409 U.S. at
196-97. Whether a "claimed violation of due process of law in the conduct of a confrontation" exists,
"depends on the totality of the circumstances surrounding it," and "each case must be considered on its
own facts." Id. at 197; Stovall, 388 U.S. at 302. The "central question," therefore, is "whether under the
'totality of the circumstances' the identification was reliable even though the confrontation procedure was
suggestive." Neil, 409 U.S. at 199; Manson v. Brathwaite, 432 U.S. 98, 114 (1977) ("[R]eliability is the
linchpin in determining the admissibility of identification testimony").

The factors to be considered in evaluating the reliability of the identification, and the "likelihood of
misidentification," include:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the
> witness' degree of attention, the accuracy of the witness' prior description of the

criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Neil, at 199-200.  Thus, "[if] under the totality of the circumstances the identification is sufficiently reliable, identification testimony may properly be allowed into evidence, even if the identification was made pursuant to an unnecessarily suggestive procedure." Bagley, 772 F.2d at 492.

Short of the point where "under all the circumstances" of a given case, there is "a very substantial likelihood of irreparable misidentification," those circumstances are "for the jury to weigh." Manson, 432 U.S. at 116 (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)).  As the United States Supreme Court has stated in such instances:

> We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

Id.  Under this standard, petitioner's claim of constitutional violation resulting from the police's use of the photomontage must fail.

Petitioner argues that none of the other individuals included in the black and white photomontage matched the physical characteristics provided to the police.  Specifically, petitioner asserts that his picture clearly stands out due to the lighter color of and highlights in his hair and to the darker complexions of the other individuals, indicating they may have Native American, Hispanic or Spanish origins, in contrast to the fact that he is Caucasian.  He also points to the fact that the victim selected his picture as evidence of the impermissible suggestiveness of the photomontage.  He further argues that use of the photomontage tainted the victim's testimony at trial, thereby prejudicing the jury.  Finally, petitioner points to certain differences in the victim's testimony and what the victim told the police, and to the victim's "advanced age" and visual impairment, as well as his "difficulty hearing, understanding and responding to questions" at trial, as evidence that the identification of him as the perpetrator was "highly unreliable."  Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus, pp. 9-11.

With respect to petitioner's photomontage claim, the Washington State Court of Appeals found as follows in dismissing his personal restraint petition:

> McNeil claims that the photomontage the police assembled was impermissibly suggestive because only one photograph matched Cole's original description of a person with long stringy blonde hair.  He argues that other photographs are of men with dark hair and Hispanic ethnicity and that his photograph is brighter than the others.

Before a reviewing court examines the reliability of a witness's identification,[2] the defendant must demonstrate impermissible suggestiveness. *State v. Vaughn*, 101 Wn.2d 604, 682 P.2d 878 (1984)).

> A defendant objecting to a photomontage as suggestive, must show that the montage directs undue attention to a particular photograph. *State v. Eacret*, 94 Wn. App. 282, 283, 971 P.2d 109 (1999). Generally, courts have found lineups or montages to be impermissibly suggestive solely when the defendant is the only possible choice given the witness's earlier description. *See State v. Traweek*, 43 Wn. App. 99, 103, 715 P. 2d 1148 (1986), *overruled on other grounds by State v. Blair*, 117 Wn.2d 479, 816 P.2d 718 (1991) (robber described as blond; defendant was the only blond man in lineup); *State v. Burrell*, 28 Wn. App. 606, 611, 625 P.2d 726 (1981) (suspect described as having frizzy Afro hairstyle; defendant was the only subject in montage with that distinctive characteristic).

*State v. Ramires*, 109 Wn. App. 749, 761, 37 P.3d 343 (2002).
> First, all the photographs are black and white and thus there is little distinction in hair color visible. In fact, petitioner's hair does not appear blonde. Second, all photographs are similar in that each has long, scraggly hair, receding hairlines, and facial hair. Third, the men appear to be of varying racial ethnicity. And fourth, all the photographs vary in lightness. Petitioner's photograph simply does not stand out amongst the others such as to leave him as the witness's only possible choice.

Record, Exhibit 11, pp. 1-2. In denying petitioner's petition for review, the Washington State Supreme Court Commissioner also found he failed to show that the photo montage was impermissibly suggestive or created a substantial likelihood of irreparable identification. Record, Exhibit 16, p. 1.

The undersigned finds the state courts' decisions on this issue were not "contrary to, or involved an unreasonable application of, clearly established federal law," nor were they "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). That is, neither the state court of appeals nor the state supreme court erred in finding petitioner's photograph did not stand out among the others contained in the photo montage, and thus was not impermissibly suggestive. Although the characteristics of the individuals in the photomontage may not be as similar to his as petitioner would have liked, like the court of appeals, the undersigned cannot say that petitioner's photograph necessarily stands out among the others "such as to leave him as the witness's only possible choice." Record, Exhibit

---

[2] "Washington case law has developed out of three Supreme Court cases: *Simmons v. United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); and *Manson v. Brathwaite*, (432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).
These factors are: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *State v. Maupin*, 63 Wn. App. 887, 897, 822 P.2d 355 (1992), *review denied*, 119 Wn2d 1003 (1992)." (footnote is footnote 1 in court of appeals' opinion).

1  10, Appendix A, Exhibit 11, p. 2.

2      Testimony obtained at petitioner's trial also fails to support a finding that the photomontage was

3  impermissibly suggestive or that there was a very substantial likelihood of irreparable misidentification

4  resulting from its use.  For example, the trial testimony reveals that the victim was able to provide a clear

5  description of petitioner to the police shortly after the robbery and prior to viewing the photomontage, that

6  the photographs used in the photomontage were of individuals with characteristics similar to those of

7  petitioner, and that the victim was able to quickly and definitively identify petitioner as the perpetrator of

8  the crime without any prompting or undue influence from the police. Respondent's Supplemental Brief,

9  Exhibit 1, Report of Proceedings ("Report of Proceedings"), p. 93 (ln. 5-22), p. 94 (5-20), p. 95 (ln. 9-23),

10  p. 96 (ln. 2-19), p. 97 (ln. 17-25), p. 98 (ln. 1-5, 18-25), p. 99 (ln. 1-25), p. 100 (ln. 1-15), p. 113 (ln. 14-

11  25), p. 114 (ln. 1-17), p. 127 (ln. 1-19).

12      Because petitioner has not shown the photomontage in this case was "impermissibly suggestive,"

13  the inquiry into his due process claim ends. Bagley, 772 F.2d at 492.  Indeed, as there does not appear to

14  be "a very substantial likelihood of irreparable misidentification" here, the circumstances surrounding the

15  photomontage and the reliability of the victim's testimony at trial were "for the jury to weigh." Manson,

16  432 U.S. at 116.  Petitioner in essence is seeking to have this court re-weigh the evidence considered by

17  the jury.  That, however, is not the role of the court here.  While it is possible the photomontage and the

18  victim's testimony may have contained "some element of untrustworthiness," such evidence was

19  "customary grist for the jury mill." Id.  That is, there is no indication that the jury in petitioner's trial was

20  "so susceptible" that they could not "measure intelligently" the weight of the identification testimony

21  elicited, though that testimony might have had "some questionable feature." Id.

22  IV.   The Evidence Presented at Trial Was Not Insufficient to Support the Firearm Enhancement

23      Petitioner argues the evidence that was offered as proof he committed robbery in the first degree

24  while armed with a firearm, as defined by state statute, at his trial was insufficient to support his

25  conviction.  A state prisoner alleging "that the evidence in support of his state conviction cannot be fairly

26  characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has

27  stated a federal constitutional claim." Jackson v. Virginia, 443 U.S. 307, 321 (1979).  The relevant

28  question in such insufficiency of the evidence claims is "whether, after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the

1    crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319 (emphasis in original).

2        In order to "overturn a jury's conviction based on insufficient evidence," therefore, the court "must

3    find that no rational jury could conclude beyond a reasonable doubt" the petitioner "committed the crimes

4    charged." <u>United States v. Guzman-Rivera</u>, 900 F.2d 681, 683 (1st Cir. 1993).  In doing so, furthermore,

5    the court "must review the record in the light most favorable to the government and resolve all credibility

6    issues in favor of the verdict." <u>Id.</u>; <u>see also</u> <u>Gordon v. Duran</u>, 895 F.2d 610, 612 (9th Cir. 1990) (record

7    viewed in light most favorable to prosecution).  As stated by the United States Supreme Court:

8            [T]he prosecution need not affirmatively "rule out every hypothesis except that of guilt,"
             . . . and . . . a reviewing court "faced with a record of historical facts that supports
9            conflicting inferences must presume--even if it does not affirmatively appear in the
             record--that the trier of fact resolved any such conflicts in favor of the prosecution, and
10           must defer to that resolution."

11   <u>Wright v. West</u>, 505 U.S. 277, 296 (1992) (quoting <u>Jackson</u>, 433 U.S. at 319, 326).  Under this standard,

12   petitioner has failed to show there was insufficient evidence to support the jury's verdict.

13       In affirming petitioner's conviction, the Washington State Court of Appeals addressed petitioner's

14   insufficiency of evidence claim as follows:

15           McNeil next asserts that the evidence is insufficient to support a conviction of
         first degree robbery.  He argues that the evidence for a conviction of first degree robbery
16       must show that the defendant *took* [emphasis in original] the property in question by
         force.  McNeil claims he already possessed the truck and that, at most, the evidence
17       "may support" that he used force to retain, but not take possession.
             But a person commits the crime of robbery when he or she:
18
             unlawfully takes personal property from the person of another or in his
19           presence against his will by the use or threatened use of immediate force,
             violence, or fear of injury to that person or his property or property of
20           anyone.  *Such force or fear must be used to obtain or retain possession*
             *of the property, or to prevent or overcome resistance to the taking*; in
21           either of which cases the degree of force is immaterial.  Such taking
             constitutes robbery whenever it appears that although the taking was
22           fully completed without the knowledge of the person from whom taken,
             such knowledge was prevented by the use of force or fear.
23
         RCW 9A.56.190 (emphasis added).  Our Supreme Court has held that to support a
24       robbery conviction, the force need not be used in the initial acquisition of the property,
         but it may be used to retain the property. *State v. Handburgh*, 119 Wn.2d 284, 293, 83
25       P.2d 641 (1992).
             Here, the evidence shows that McNeil initially took Cole's truck from Cole's
26       property when Cole was not present but that, when Cole appeared, McNeil pointed the
         gun at him and thereby retained control of the truck.  Thus the crime committed was
27       robbery.  McNeil was armed with a deadly weapon and either displayed a firearm or
         what appeared to be a firearm.  Therefore, because a firearm is clearly a weapon, a
28       rational trier of fact could find that McNeil committed first degree robbery.

     Record, Exhibit 5, pp. 6-7.  With respect to petitioner's insufficiency of evidence claim in the context of his

1  personal restraint petition, the Washington State Supreme Court Commissioner made the following ruling:

2          Mr. McNeil next argues that the evidence did not show he was armed with a
   firearm.  On direct review, the Court of Appeals considered whether the evidence
3  supported the conviction for first degree robbery.  In holding affirmatively, the court
   noted that there was sufficient evidence that at the time of the crime Mr. McNeil was
4  either armed with a firearm or displayed what appeared to be a firearm. *See* RCW
   9A.56.200(1)(a) (elements of first degree robbery).  Mr. McNeil now argues, however,
5  that there was insufficient evidence, for purposes of the firearm sentence enhancement,
   that he was armed with an actual firearm.  In dismissing Mr. McNeil's personal restraint
6  petition, the Chief Judge relied on the Court of Appeals opinion on direct appeal.  Mr.
   McNeil argues the Chief Judge erred because the direct appeal only considered the
7  sufficiency of the evidence of first degree robbery, not the sufficiency of the evidence of
   the firearm enhancement.
8          It does appear that on direct appeal the Court of Appeals considered only
   whether the evidence supported the first degree robbery conviction.  And though the
9  court, in its recitation of the facts, said that Mr. McNeil was armed with a deadly
   weapon, it did not specifically address whether he was "armed" for purposes of the
10 firearm enhancement.  The firearm enhancement applies only if the defendant possessed
   an actual firearm, not if he possessed an object that merely appeared to be a firearm.
11 *State v. Tongate*, 93 Wn.2d 751, 755, 613 P.2d 121 (1980).
           Nonetheless, Mr. McNeil must demonstrate that, after viewing the evidence and
12 all reasonable inferences therefrom in the light most favorable to the State, no rational
   trier of fact could have found that he was armed with an actual firearm. *See State v.*
13 *Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).  He does not make this showing.
   He provides a single page from the trial transcript, where the victim, when asked why he
14 thought the object he saw in Mr. McNeil's hand was a gun, answered, "Well, because it
   looked like one."  But without a complete record, it cannot be said that there was no
15 evidence from which the jury could have reasonably concluded that Mr. McNeil was
   actually armed with a firearm.

16 Id., Exhibit 16, pp. 1-2.

17          Respondent has provided this court with the complete transcript of petitioner's trial. (Dkt. #22).

18 After reviewing that transcript in the light most favorable to the government and resolving all credibility

19 issues in favor of the verdict, however, the undersigned cannot say that no rational trier of fact could not

20 have found the essential elements of the crime alleged beyond a reasonable doubt.  Deputy James Morini

21 testified that the victim told him shortly after the robbery that the firearm used during the commission of

22 that crime was silver and appeared to be a semi-automatic handgun. Report of Proceedings, p. 45 (ln. 19-

23 25), p. 46 (ln. 1-2).  He further testified that the victim had "[n]o trouble" conveying what he had seen at

24 that time. Id. at p. 52 (ln. 5-13).

25          The victim himself testified that a gun was "pointed at" him during the commission of the crime. Id.

26 at p. 107 (ln. 9-14).  He also testified that "as far as" he "was concerned" the object being pointed at him

27 was a gun, that it was held in a manner such that it was "resting right on the bed of the truck," and that it

28 appeared to be a "pistol." Id. at p. 109 (ln. 6-25), p. 110 (ln. 1-7).  The victim further testified that while

1   the perpetrator "didn't have any gun when he was walking" in the victim's yard, he "pulled a gun out"

2   when "he got in" the victim's truck. Id. at p. 111 (ln. 14-16).  Finally, the victim testified that the individual

3   who had the gun and pointed it at him was petitioner. Id. at ln. 2-12.

4        During cross-examination from petitioner's trial attorney, the victim again stated that petitioner had

5   "a gun on" him while peering out from behind the tailgate of the victim's truck. Id. at p. 119 (ln. 25), p.

6   120 (ln. 1-5).  Although there appears to be some conflict in the victim's testimony and report to the police

7   as to whether the gun was gold or silver (see Id. at p. 109 (ln. 18-19), p. 116 (ln. 22-25), p. 117 (ln. 1-8)),

8   the victim clearly indicated that petitioner possessed a handgun and pointed it at him for at least some

9   period of time during the commission of the crime.  Accordingly, the undersigned finds the state courts'

10  decisions on this issue also were neither "contrary to, or involved an unreasonable application of, clearly

11  established federal law," nor "based on an unreasonable determination of the facts in light of the evidence

12  presented." 28 U.S.C. § 2254(d).

CONCLUSION

14       For the reasons set forth above, the decisions of the state courts were not "contrary to, or involved

15  an unreasonable application of, clearly established federal law," nor were they "based on an unreasonable

16  determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).  Accordingly, the court

17  should deny petitioner's federal petition for writ of *habeas corpus*.

18       Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 72(b),

19  the parties shall have ten (10) days from service of this Report and Recommendation to file written

20  objections thereto.  See also Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those

21  objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit

22  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set this matter for consideration on **April 14,**

23  **2006**, as noted in the caption.

24       DATED this 17th day of March, 2006.

27                              Karen L. Strombom
                               United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 12